IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIFFANY DAWN ROEBUCK,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 1:12-cv-01386-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Tiffany D. Roebuck (Roebuck) brings this action for judicial review of the Commissioner's decision denying plaintiff's application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

1 – OPINION AND ORDER

Plaintiff seeks benefits as of August 25, 2008 from disability resulting from obesity, degenerative disc disease with herniated discs, panic disorder, adjustment disorder with depression, and diabetes. In his decision dated April 28, 2011, the administrative law judge (ALJ) Michael Gilbert determined that the plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. TR 17-36.[1]

Plaintiff argues the ALJ erred in determining plaintiff was not disabled by failing to give full credit to the opinions of Dr. Ackerman, the treating rehabilitation doctor, and Dr. Keiper, the treating neurosurgeon. [#11 and #19]. The Plaintiff also argues that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony, failed to prove that Plaintiff was able to do "other work" in the national economy, and did not base their decision on "substantial evidence" as required by 42 U.S.C. §405(g). *Id.*

For the following reasons, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm. for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). As the Appeals Council denied plaintiff's request for review, the ALJ's written decision became the Commissioner's final decision. 20 C.F.R. § 404.981. To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

---

[1] "TR" refers to the Transcript of Social Security Administrative Record [#7] provided by the Commissioner.

2 – OPINION AND ORDER

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the claimant satisfies their burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520.

At step one, the ALJ found that Roebuck had not engaged substantial gainful activity since her alleged onset date of August 25, 2008. TR 22; 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determined that Roebuck had the following severe impairments: degenerative disc disease of the lumbar spine with herniated discs, obesity (BMI 48), adjustment disorder with depression, and panic disorder without agoraphobia (20 C.F.R. 404.1520(c), 416.920(c)). *Id.* At step three, the ALJ found that Roebuck's impairments did not meet or equal at least one of the "listed" impairments in 20 C.F.R. §§ 404.1509, 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and/or 416.926. The ALJ noted that, "No treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment." TR 23.

At step four, the ALJ evaluated the medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by their impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then uses this information to determine if the claimant can perform their past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If not, the analysis proceeds to step five. Here, the ALJ found that Roebuck was not able to perform her past relevant work. TR 34.

3 – OPINION AND ORDER

At step five, the burden shifts to the Social Security Administration to show that "the claimant can adjust to perform some other work that exists in the national economy, taking into consideration the claimant's RFC, age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f); *Yuckert v. Bowen*, 482 U.S. 137 (1987) at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). Here, the ALJ found that based on Roebuck's aforementioned RFC determination, she could perform work existing in significant numbers in the national economy. [#15].

Roebuck asserts that the ALJ erred in his findings at steps three, four, and five. [#11, 19]. The crux of Roebuck's arguments center around the issue of whether the ALJ gave enough weight to Roebuck's own testimony and to the opinions of two of her treating physicians, Dr. Ackerman and Dr. Keiper, who stated that Roebuck would always be limited to a 10 pound weight restriction (instead of 20 pounds occasionally and 10 pounds frequently as determined by the ALJ based on statements from other physicians), and that Roebuck would need to alternate her position throughout the workday, and would have recurrent absences two or more times per month. [#11 at 14-17]; TR 317-321, 325, 526-527.

As plaintiff asserts, "Even if the treating physician's medical opinion is inconsistent with other substantial evidence in the record, their opinion is still entitled to deference and must be weighted using all the factors provided in 20 C.F.R. 404.1527." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) [#19]. Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Further, the ALJ's credibility findings must be "sufficiently specific to

4 – OPINION AND ORDER

permit the reviewing court to conclude that the ALJ did not *arbitrarily* discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

It is well established that the ALJ is responsible for determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Dist. 1995). This is because courts have found that ALJ's are in the *best position* to make findings in regards to credibility. *Fair v. Bowen*, 885 F.2d 597 at 604 (9th Cir. 1989). It follows that when an ALJ has made specific findings justifying a decision to disbelieve an allegation, and those findings are supported by substantial evidence in the record, the Court's role is not to second-guess that decision. *Id.* Further, it has been found that "courts should uphold an ALJ's decision when the evidence is susceptible to *more than one* rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008).

In determining credibility, the ALJ may consider objective medical evidence, the claimant's treatment history, the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 341, 1284 (9th Cir. 1996). The ALJ is charged with determining credibility of medical testimony and resolving ambiguities in the evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

Other factors an ALJ may consider when determining credibility include "ordinary" techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

5 – OPINION AND ORDER

and the claimant's daily activities. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

This Court's review of the Commissioner's final disability determination is limited to evaluating whether the findings are supported by substantial evidence and whether the decision is free of harmful legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d at 1110 (internal quotation marks omitted). The court may not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "if evidence exists to support more than one rational interpretation, the Court must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The facts and evidence in this case are clearly susceptible to more than one rational interpretation. This court finds that the ALJ's determinations were supported by substantial evidence in the record and that his decision was free of harmful legal error. The ALJ's decision followed a logical sequence and the reasons for rejecting and/or giving less weight to some of Roebuck's own testimony and that of doctors Ackerman and Keiper, were based on the record and was not arbitrary. The ALJ offered clear and convincing reasons for rejecting Roebuck's disability claim, which are supported by substantial evidence in the record. Therefore, the ALJ's finding, and thus the Commissioner's final decision, must be upheld. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

In discrediting some of Roebuck's testimony, the ALJ referenced "lack of objective medical evidence, conservative treatment, and numerous inconsistent statements of limitations [malingering] to discredit Plaintiff's testimony." Specifically, the ALJ stated, "the claimant had validity problems during at least two evaluations by different medical sources." TR 33. Specifically, the ALJ found evidence of malingering during her evaluation by Don Remschel in August 2010, wherein Roebuck scored 10/16 (63%) on her validity test during her Physical Capacity Evaluation (TR 29-31, 30, 33, 518-521), as well as after her appointment with Dr. Kitchel in January, 2009 (TR 28-29, 385-387, 391), and within her Residual Functional Capacity Assessment (TR 32-33).

The ALJ also found inconsistencies between Roebuck's subjective complaints and her daily activities, which included the following:

> The ALJ noted Plaintiff was able to cook daily, performed most household chores such as doing dishes, wiping down counters, folding laundry, shopping once or twice a month, caring for the family pets, including walking the dogs and taking them to the vet, going outside daily, travelling by foot, public transportation, and as a passenger in a motor vehicle, doing puzzles, and visiting with friends regularly. TR 24, 26-27, 32, 243-258, 281-288; [#15].

While these activities do not automatically mean the plaintiff is also capable of working, such discrepancies could be found to be inconsistent with that of a disabled individual with the plaintiff's alleged level of impairment. The ALJ is allowed to draw an adverse inference as to the plaintiff's credibility in regards to her subjective complaints. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

In regards to Roebuck's mental health claims, the ALJ pointed to evidence within the record to demonstrate that despite her complaints of depression and anxiety, she did not take medications to address mental health symptoms and/or failed to follow prescribed treatment, and did not continue to seek out mental health treatment. [#15]. The ALJ viewed Roebuck's missing

7 – OPINION AND ORDER

appointments due to "lack of transportation" as cause for concern, based on precedent that, "an ALJ may view a claimant's *unexplained* failure to seek treatment as a factor in their decision." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) [#15]. Regardless, the ALJ accepted Roebuck's mental health claims at face value, but found them to only be a "mild" restriction on her daily living. TR 24. After evaluating the entire record to find Roebuck was not entitled to benefits, the ALJ made the following determination of Roebuck's residual functional capacity:

> …To lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk two to four hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She required the option to alternate between sitting and standing every 30 to 60 minutes, but she should remain on task while doing so. She could balance frequently but she should never climb ladders, ropes, or scaffolds. She could perform all other postural activities occasionally. She was able to perform simple, routine, repetitive tasks with a reasoning level no greater than two and that required no more than occasional contact with the public. TR 26; [#15].

As previously discussed, Roebuck disagrees with the ALJ's determination, and in particular to the weight lifting assessment. [#11, 19]. Dr. Stowell, Dr. Kehrli, Dr. Alley, and Mr. Remschel all affirmed Dr. Ackerman's initial assessment of Roebuck's weight lifting abilities to include the capability of lifting up to 20 pounds on occasion. This court does not find the plaintiff's frequent mention of a self-reported episode involving her "developing pain after picking up a 13-pound watermelon" TR 531; [#19 at page 3 and #11 at page 7] as definitive evidence of a level of increased pain that proves Roebuck could never again lift more than 10 pounds. This court finds that the ALJ was well within his prevue to give less credence to the watermelon anecdote than to objective medical records and assessments.

It also appears Roebuck has more recently been diagnosed with Diabetes Mellitus Type-II. TR 22, 536. Although there are no medical records specifically discussing this potential determinable impairment due to its more recent onset, it, along with any worsening health conditions, may be grounds for the plaintiff to file a new application for benefits in the future.

8 – OPINION AND ORDER

Because this court has agreed with the ALJ's determinations that Roebuck's claim failed at steps three and four, and that Roebuck's combination of impairments do not currently rise to the level of a listed disability under the Social Security Act, it is not necessary to determine the merits and/or reasonableness of the residual functional capacity assessment and the suggested alternative employment/occupation possibilities identified at step five. However, since the ALJ made findings, this court will address the merits briefly. At step five, the ALJ found the following, based on her residual functional capacity:

> Plaintiff could perform work existing in significant numbers in the national economy; specifically noting the positions identified by the vocational expert at the second hearing in this case on February 16, 2011: office helper, electronics worker, and garment sorter (Tr. 34-35, 119-122), Finding 10). See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g). The ALJ also made an alternative step five finding based upon vocational expert testimony from the prior hearing in this case on August 5, 2010 (Tr. 35). In that hearing, the ALJ asked the vocational expert if there were any jobs available to an individual with the same exertional and non-exertional limitations as noted above in the ALJ's residual functional capacity assessment with the exception of a limitation to sedentary work as opposed to light work. Based on a limitation to sedentary work with the same exertional and non-exertional limitations as noted above, the vocational expert testifed Plaintiff would be able to perform the following jobs: table worker and optical goods worker (Tr. 35-36, 95-99, Finding 10). [#15]

As Roebuck was born in 1985, and thus approximately 23 years old at the time of her alleged disability onset date of August 25, 2008 (TR 20, 34, 201), she had very limited work experience as a childcare worker, caregiver, cashier, fast food worker, and freight/material handler. TR 34, 315. This limited experience makes determining her alternatives cumbersome, but all of the suggested occupations and the alternative occupations do fit within the established legal standards and are reasonable for someone with Roebuck's impairments.

9 – OPINION AND ORDER

## CONCLUSION

The ALJ's findings that Roebuck is not entitled to disability insurance benefits or SSI disability benefits under the Social Security Act is based upon correct legal standards and supported by substantial evidence in the record. Therefore, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 9th day of September, 2013.

/s/ Michael J. McShane
Michael McShane
United States District Judge